[No. 29671-7-III. Division Three. December 6, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ULISES
IBARRA GUEVARA, *Appellant*.

186

*Jan Trasen*, for appellant.

*James P. Hagarty, Prosecuting Attorney*, and *David B. Trefry, Deputy*, for respondent.

¶1 SWEENEY, J. — The court need not suppress incriminating evidence discovered as the result of a "social contact" with a defendant. Here an officer contacted the defendant, who was in the company of other boys, told them that he suspected they were using drugs and asked them to turn their pockets inside out. We conclude that the police contact here amounted to more than a "social contact," and we therefore reverse the conviction for possession of drugs and dismiss the prosecution.

## FACTS

¶2 The facts here are undisputed. Yakima Police Officer Ben Graves worked as a school resource officer at Eisenhower High School in Yakima, Washington. Officer Graves saw three boys walking east to the 3800 block of Webster Avenue. He knew one was an Eisenhower High School student. He also knew that students often went to that area to smoke marijuana. Officer Graves thought that the boys would be late for 8:00 a.m. classes because it was about 7:55 a.m. and the boys were more than a block from the high school.

¶3 The officer followed the boys in his marked patrol car. He wore his police uniform. He stopped his car about 20 feet behind the boys. He got out of his car and walked east toward them. He asked them what they were doing. They replied that they were going for a walk. Officer Graves told them that he believed they were skipping school to smoke

marijuana. He then asked them if they would show him the contents of their pockets. The boys began showing him what was in their pockets. He asked them to "bunny ear" their pockets one by one so he did not miss anything. Report of Proceedings (RP) at 11-12. Ulises Ibarra Guevara was the last to empty his pockets. When he did, Officer Graves saw a plastic "baggie" tucked behind Mr. Ibarra Guevara's Eisenhower High School identification card. He asked Mr. Ibarra Guevara what the baggie contained, and Mr. Ibarra Guevara responded that it was marijuana.

¶4 The State charged Mr. Ibarra Guevara with possession of less than 40 grams of marijuana. Mr. Ibarra Guevara moved to suppress the drug evidence. The court concluded that the stop was a "social contact" and denied the motion. The court found Mr. Ibarra Guevara guilty as charged.

## DISCUSSION

¶5 Whether police conduct amounts to a seizure is a mixed question of law and fact. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). The trial court is entitled to great deference in resolving the facts, but "the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo." *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003).

¶6 The court must enter written findings and conclusions following a suppression hearing. CrR 3.6. Those findings and conclusions are generally necessary for appellate review. *State v. Head*, 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998). The court here did not enter findings or conclusions. We may, however, overlook this failure where the court clearly and comprehensively states the basis of its opinion orally. *State v. Cruz*, 88 Wn. App. 905, 907-09, 946 P.2d 1229 (1997). Here, the evidence is uncontested and the court's oral ruling fully explains the basis of its opinion. It

concluded this was not a seizure but rather a social contact. We then conclude that we can conduct a meaningful review without written findings and conclusions.

POLICE SOCIAL CONTACT

■ ¶7 Article I, section 7 of our state constitution provides that "[n]o person shall be disturbed in his private affairs . . . without authority of law." It "casts a wider net than the Fourth Amendment's protection against unreasonable search and seizure." *Harrington*, 167 Wn.2d at 663; U.S. CONST. amend. IV.

■ ¶8 A person is seized when "considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). Police actions likely to amount to a seizure include " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

■ ■ ¶9 A "social contact" is not a seizure. *Harrington*, 167 Wn.2d at 664-65. It "occupies an amorphous area . . . resting someplace between an officer's saying 'hello' to a stranger on the street and, at the other end of the spectrum, an investigative detention." *Id.* at 664. A social contact may involve a police officer asking for identification or to remove one's hands from his pockets. *State v. Armenta*, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997); *State v. Nettles*, 70 Wn. App. 706, 712, 855 P.2d 699 (1993). These activities, in isolation, do not amount to a seizure. *Armenta*, 134 Wn.2d at 11. But even these seemingly innocuous small intrusions may amount to a seizure when combined. *Harrington*, 167 Wn.2d at 668 (citing *State v. Soto-Garcia*, 68 Wn. App. 20,

841 P.2d 1271 (1992), *abrogated on other grounds by Thorn*, 129 Wn.2d 347).

¶10 In *Harrington* and *Soto-Garcia*, the trial court concluded that the combination of small intrusions did ripen into a seizure. 167 Wn.2d at 669; 68 Wn. App. at 25. In both cases, the defendants were walking in public when officers stopped and questioned them. *Harrington*, 167 Wn.2d at 661; *Soto-Garcia*, 68 Wn. App. at 22. The defendants answered voluntarily at first, but the police kept prying. In *Harrington*, the officer asked Mr. Harrington to remove his hands from his pockets and consent to a search as another officer arrived. 167 Wn.2d at 662. In *Soto-Garcia*, the officer asked if he had any cocaine on him, Mr. Soto-Garcia denied having cocaine, and the officer asked for consent to a search. 68 Wn. App. at 22. The courts in both cases concluded that these amounted to more than "social contacts" and therefore concluded that the drug evidence should have been suppressed. *Id.* at 29; *Harrington*, 167 Wn.2d at 670.

¶11 The *Harrington* court suggested that an officer's request to search is particularly significant. *See Harrington*, 167 Wn.2d at 667-70. It noted that "[r]equesting to frisk is inconsistent with a mere social contact." *Id.* at 669. It explained that "[if the officer] felt jittery about the bulges in Harrington's pockets, he should have terminated the encounter—which [the officer] initiated—and walked back to his patrol car." *Id.* And it concluded that the request to search ultimately caused the social contact to mature into an unlawful seizure. *Id.*

¶12 Cases where a social contact did not mature into an unlawful seizure typically involve requests for identification rather than direct requests to search. *See State v. Bailey*, 154 Wn. App. 295, 298, 224 P.3d 852, *review denied*, 169 Wn.2d 1004 (2010); *State v. Smith*, 154 Wn. App. 695, 226 P.3d 195, *review denied*, 169 Wn.2d 1013 (2010); *State v. Johnson*, 156 Wn. App. 82, 231 P.3d 225 (2010), *remanded*, 172 Wn.2d 1001 (2011). In *Bailey* and *Johnson*, officers

approached the defendants in public areas and asked the defendants to identify themselves. Police checked for outstanding warrants. Both men had outstanding warrants. Police then discovered drugs in a subsequent search incident to the arrest on the warrants. *Bailey*, 154 Wn. App. at 298; *Johnson*, 156 Wn. App. at 86-88. In *Johnson*, the court cited several factors in concluding that the incident was not an unlawful seizure: the officer parked some distance behind Mr. Johnson, did not activate his lights, was not accompanied by other officers, and did not demand identification or ask that Mr. Johnson step out of the car. *Johnson*, 156 Wn. App. at 92. In *Bailey*, we noted that the officer did not display force, for example, by using sirens or lights, and that Mr. Bailey voluntarily approached the officer and answered his questions. 154 Wn. App. at 302. The court then concluded that without more, a reasonable person would have felt free to leave. *Id.*

¶13 *Smith*'s facts are more complicated but also start with an officer asking Mr. Smith for identification. Mr. Smith's true identity was unclear, so the officer asked to look in Mr. Smith's wallet. The officer found cards in different names and drugs in the wallet. The court in *Smith* distinguished the facts from *Harrington* and *Soto-Garcia* by noting that the officer did not ask Mr. Smith "about illegal activity, attempt to control his actions, or request to frisk him." *Smith*, 154 Wn. App. at 702. The court concluded that the contact was not an unlawful seizure because the officer merely asked for identification and looked through Mr. Smith's open wallet with Mr. Smith's permission. *Id.* at 698.

¶14 Here the officer expressed suspicion that these kids were using drugs and skipping school. *See Soto-Garcia*, 68 Wn. App. at 22. And the officer asked for and received permission to search them. We concluded that this is inconsistent with the tenets of a "social contact." The defendant here would hardly have felt free to simply walk away. Like in *Soto-Garcia*, the officer here voiced suspicion of drug possession and asked for consent to search. The

request to search alone is inconsistent with a social contact. *See Harrington*, 167 Wn.2d at 669.

COMMUNITY CARETAKING FUNCTION

¶15 Alternatively, the State suggests that Mr. Ibarra Guevara and his cohorts were detained by the officer in his capacity as a community caretaker. RCW 28A.225.060. First, that was not the basis for the court's ruling. RP at 35. Nor did the officer advance this as a reason for his detention. Police may certainly detain a child skipping school and return the child to his parents or the school. RCW 28A.225-.010. That is not what was done here.

¶16 The community caretaking function recognizes that police officers may contact individuals for noncriminal, noninvestigatory reasons, including emergency aid and routine checks on health and safety. *See State v. Kinzy*, 141 Wn.2d 373, 5 P.3d 668 (2000). Whether such a contact is reasonable depends on whether the public's interest in police performing a community caretaking function outweighs an individual's interest in freedom from police interference. *Id.* at 387. The community caretaking function should be cautiously applied because "even well-intentioned stops" carry a "real risk of abuse." *State v. DeArman*, 54 Wn. App. 621, 626, 774 P.2d 1247 (1989).

¶17 The State tries to distinguish the unreasonable community caretaking stop in *Kinzy*. It argues that unlike Ms. Kinzy, Mr. Ibarra Guevara could have just walked away from the officer. In *Kinzy*, police saw Ms. Kinzy on a street corner in downtown Seattle late at night. The area was known for drug trafficking and the officers had had prior drug-related contacts with a man in Ms. Kinzy's company. Ms. Kinzy appeared to be 11 or 13 years old. Officers hailed Ms. Kinzy, she ignored them, and one of the officers grabbed Ms. Kinzy's arm. They asked her a series of questions, patted her down, and saw small "flecks of rock cocaine" on the lining of her coat; Ms. Kinzy later admitted that she had more crack cocaine in her brassiere. *Kinzy*, 141 Wn.2d

at 378-79. The court ultimately concluded that Ms. Kinzy's privacy interest outweighed the public interest in police performing the community caretaking function and held that the seizure was therefore unreasonable. *Id.* at 390-91.

¶18 Here Officer Graves did not detain Mr. Ibarra Guevara and take him back to school as authorized by RCW 28A.225.010. He asked about illegal drug use and then asked him to empty his pockets. We conclude this is not community caretaking but rather an unwarranted intrusion into Mr. Ibarra Guevara's private affairs, an intrusion prohibited by our state constitution. CONST. art. I, § 7.

¶19 We reverse the conviction and dismiss the prosecution.

SIDDOWAY, A.C.J., and BROWN, J., concur.