2014 SEP 29 AM 11: 05



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70305-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CECIL LEON BURKETT, JR., | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: September 29, 2014 |
| | ) | |

Cox, J. – Cecil L. Burkett, Jr. appeals his two convictions of possession of a controlled substance with intent to deliver—counts I and IV. Burkett argues that there was insufficient evidence to support count IV. He also argues the trial court erred when it denied his motion to suppress evidence related to count I.

There was sufficient evidence to support count IV. We exercise our discretion and accept the State's concession of law that the frisk of Burkett was not authorized and the motion to suppress should have been granted for count I. We also accept the State's concessions of law that the scrivener's error in the judgment and sentence should be corrected on remand. We affirm in part, reverse in part, and remand with directions.

The charges relevant to this appeal are based on two separate incidents. The first occurred in May 2011. The second occurred in November 2011.

The unchallenged findings and conclusions of the CrR 3.6 hearing set forth the relevant facts for count I. In May 2011, a Washington State Patrol trooper pulled over a VW car for speeding. Burkett was a passenger in the VW.

The trooper discovered that the driver's license was suspended, and he detained the driver at the patrol car. The trooper saw two backpacks in the VW.

The trooper asked Burkett about the backpacks and Burkett said that neither belonged to him. The trooper returned to the patrol car and the driver said he owned one backpack and Burkett owned the other. As the trooper turned to the VW, he saw Burkett bent over into the driver's area. He told Burkett not to move around in the car. The trooper then asked for Burkett's license to check if he was legal to drive, wrote down the information, and returned it to him. He asked Burkett to step out of the car and patted him down for officer safety. The trooper asked for consent to search Burkett's backpack, and Burkett consented. Inside, the trooper found illegal narcotics and arrested Burkett.

The relevant facts for count IV are largely undisputed. In November 2011, two undercover detectives with the Snohomish County Sheriff's Office Drug Interdiction Unit witnessed what they believed to be a drug transaction in a shopping mall parking lot. They decided to follow one of the trucks involved. A uniformed officer in a marked police car stopped the truck. Burkett was the driver and lone occupant. At trial, the detectives and Burkett gave conflicting accounts of the conversation that ensued. This is detailed later in this opinion.

Burkett eventually consented to a search of his truck and backpack. He also stated that he had $10,000 in his truck. At this point, the detectives arrested Burkett for delivery of a controlled substance. The officers searched Burkett's truck and backpack and recovered three pill bottles containing various

prescription drugs. They also recovered two bundles of money wrapped in rubber bands inside a cloth stocking cap.

Following these and other incidents, the State charged Burkett with five criminal counts involving various drug violations. Burkett pled guilty to two of the charges, and one was dismissed. Thus, the only two counts relevant to this appeal are counts I and IV.

In count I, the State charged Burkett with possession of a controlled substance with intent to manufacture or deliver based on the May 2011 incident. In count IV, the State charged Burkett with possession of a controlled substance with intent to manufacture or deliver based on the November 2011 incident.

With respect to count I, Burkett moved to suppress the evidence found in his backpack. After hearing testimony and argument, the court denied this motion. The court entered written findings of fact and conclusions of law after the opening brief in this appeal. Burkett waived his right to a jury trial and agreed to a bench trial on documentary evidence. The trial court found Burkett guilty as charged in count I.

With respect to count IV, the case proceeded to a jury trial, and the jury found Burkett guilty as charged.

Burkett appeals his convictions for counts I and IV.

**SUFFICIENCY OF THE EVIDENCE**

Burkett argues that the State failed to prove that he possessed oxycodone with the intent to deliver in the November incident. We disagree.

Due process requires the State to prove beyond a reasonable doubt all the necessary facts of the crime charged.[1] "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[2] "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[3] Circumstantial evidence and direct evidence are equally reliable.[4] An appellate court must defer to the jury's determination as to the weight and credibility of the evidence and to the jury's resolution of any conflicts in the testimony.[5]

"It is unlawful in this state for anyone to possess a controlled substance with an intent to deliver."[6] The State "must prove that the defendant intended to deliver the controlled substance—presently or at some time in the future."[7]

---

[1] State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).

[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[3] Id.

[4] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

[5] Id. at 874-75.

[6] State v. Davis, 79 Wn. App. 591, 594, 904 P.2d 306 (1995).

[7] Id.

Convictions for possession with intent to deliver are highly fact specific.[8] Given the nature of the charge, "evidence is usually circumstantial."[9] Mere possession is not sufficient to support an inference of intent.[10] But an intent to deliver may be inferred from an exchange or possession of significant amounts of drugs or money.[11]

Here, there was sufficient evidence to support this conviction. At trial, one of the undercover detectives testified that Burkett admitted to the drug deal and purported to be working undercover. The detective testified that Burkett "told [him] that he received $120 from [the other man in the parking lot] for some Oxy *that Burkett was going to sell him the following day.*" The detective testified that Burkett then changed his story, stating that he had already sold the pills to the man for $160. This testimony is evidence that Burkett intended to deliver a controlled substance at some point in the future.

Further, Burkett had $13,000 in his backpack. And he possessed two bundles of money with many bills in denominations of $10, $20 and $100. The detective said that this was significant because it is consistent with drug dealing. This is additional circumstantial evidence supporting the conviction.

At trial, Burkett denied the drug deal. He testified that he told the detective that the $160 was money owed to him for an electrical job. But credibility

---

[8] Id.

[9] Id.

[10] Id.

[11] Id. at 594-95.

5

determinations are for the trier of fact and are not subject to review.[12] The jury was entitled to believe the detective and disbelieve Burkett.

Burkett argues that two of the pill bottles bore his name, he had prescriptions for Oxycodone and for Ritalin, he was physically addicted to Oxycodone, and the quantity he possessed was consistent with personal use. But even if these facts suggest that Burkett possessed some of these drugs for personal use, there is also sufficient evidence that he intended to deliver at least some of the pills. Our role is not to reweigh the evidence and substitute our judgment for that of the jury.[13]

## MOTION TO SUPPRESS

Burkett argues that the trial court erred when it denied his motion to suppress the evidence found in his backpack during the May incident. He contends that the trooper seized him "well before he formed a reasonable suspicion of criminal activity," and, thus, the trooper "did not lawfully obtain Burkett's consent to search his backpack without a warrant." The State does not respond to all of these arguments. But it concedes that the frisk of Burkett was a seizure that was "not supported by sufficient facts to give rise to a reasonable suspicion of criminal activity."[14] The State further concedes that Burkett's consent to search "was not sufficiently separated from the unjustified 'seizure' to

---

[12] Thomas, 150 Wn.2d at 874.

[13] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

[14] Brief of Respondent at 7-8.

render it valid."[15] Thus, the State concedes that the evidence from the search should have been suppressed and the conviction on count I should be reversed.[16] Exercising our discretion, we accept the State's concessions of law.

"Article I, section 7 of our state constitution provides that '[n]o person shall be disturbed in his private affairs . . . without authority of law.'"[17] "It 'casts a wider net than the Fourth Amendment's protection against unreasonable search and seizure.'"[18]

"'Not every encounter between an officer and an individual amounts to a seizure.'"[19] "A person is 'seized' under the Fourth Amendment only if, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[20] "'Whether a reasonable person would believe he was detained depends on the particular, objective facts surrounding the encounter.'"[21] "The relevant question is whether a reasonable person in the individual's position would feel he or she was being detained."[22]

---

[15] Id. at 8.

[16] Id.

[17] State v. Ibarra Guevara, 172 Wn. App. 184, 188, 288 P.3d 1167 (2012) (alteration in original).

[18] Id. (quoting State v. Harrington, 167 Wn.2d 656, 663, 222 P.3d 92 (2009)).

[19] State v. Armenta, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting State v. Aranguren, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985)).

[20] Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

[21] Id. at 11 (quoting State v. Ellwood, 52 Wn. App. 70, 73, 757 P.2d 547 (1988)).

[22] Harrington, 167 Wn.2d at 663.

Police actions likely resulting in a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"[23] Even "seemingly innocuous small intrusions may amount to a seizure when combined."[24] An officer's request to frisk can be "particularly significant" when determining whether a person has been seized.[25]

If consent to search is obtained through exploitation of a prior illegal seizure, suppression of the evidence is required.[26]

Whether a person has been seized under the Fourth Amendment is a mixed question of law and fact.[27] "'The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference,' but 'the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo.'"[28]

Here, the trial court concluded that "the [frisk] was not to control or seize [Burkett], who was still free to leave, but simply for [officer] safety."[29] But the

---

[23] Id. at 664 (internal quotation marks omitted) (quoting State v. Young, 135 Wn.2d 498, 512, 957 P.2d 681 (1998)).

[24] Ibarra Guevara, 172 Wn. App. at 188.

[25] Id. at 189 (citing Harrington, 167 Wn.2d at 667-70).

[26] Harrington, 167 Wn.2d at 670.

[27] Armenta, 134 Wn.2d at 9.

[28] Id. (quoting State v. Thorn, 129 Wn.2d 347, 351, 917 P.2d 108 (1996)).

[29] Clerk's Papers at 126.

State concedes that the frisk was a seizure and further concedes that it was not lawful. We accept these concessions of law.

Because the State also concedes that Burkett's consent to search his backpack was obtained through the exploitation of a prior illegal seizure, suppression of the evidence was required.[30] Accordingly, we reverse Burkett's conviction for count I.

Burkett also contends that several of the trooper's acts prior to the point of the frisk independently constituted a seizure. Because of the reversal of the conviction on count I for the reasons stated, we need not reach these arguments.

## SENTENCING AUTHORITY

Burkett contends that the trial court exceeded its statutory sentencing authority by ordering payment of a $100 domestic violence penalty. The State concedes that the judgment and sentence contains a scrivener's error. After reviewing the transcript of the sentencing hearing, we agree. We accept the State's concession and direct the court to correct this error on remand.

We affirm count IV, reverse count I, and remand with directions to the trial court to correct the scrivener's error.

_Cox, J._

WE CONCUR:

_____

_Becker, J._

_____

[30] Harrington, 167 Wn.2d at 670.

9