FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9: 28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46395-4-II |
| Respondent, | |
| v. | |
| CHRISTOPHER LOUIS WITHERS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Christopher Louis Withers appeals his convictions of unlawful possession of a controlled substance (methamphetamine) and making a false or misleading statement to a public servant. Withers contends that the trial court erred in denying his motion to suppress because the evidence leading to his convictions resulted from an unlawful seizure. We hold that the interaction between Withers and the officers was a social contact that did not amount to a seizure. We uphold the trial court's suppression ruling and affirm the convictions.

## FACTS

Cowlitz County Deputy Sheriff Derrick Baker was driving in Kelso when he heard a radio report from the Kelso Police Department. An off-duty deputy reported a possible bicycle theft after seeing two men riding bicycles and pulling a third bicycle with them. Baker was not dispatched to investigate the call, but he looked for individuals fitting the men's descriptions because he was in the area.

Baker soon saw two men riding bicycles and wheeling a third bicycle. Withers was one of those men. Baker drove past them and pulled into a parking lot. Baker's patrol car did not impede or block the men's travel, and Baker did not turn on the car's lights or siren. Baker was in uniform, but he did not draw his weapon as he approached the men on foot.

Baker initiated contact by asking the men how they were doing and whether he could speak with them. Both men stopped and spoke to Baker while remaining on their bicycles. Baker spoke to the men for a few minutes about the Kelso report concerning the third bicycle. During that questioning, Withers put his hands in his pockets, and Baker instructed him to keep his hands visible. When Baker asked the men for their names, Withers identified himself as Jamey Leeroy Withers but had trouble remembering his birthdate. Baker looked up Jamey Leeroy Withers in his computer system and noticed that Withers did not match Jamey Withers' physical description.

Shortly thereafter, Kelso Police Officer Tim Gower arrived at the scene. Gower saw that the two men were not handcuffed and that they were seated on their bicycles while Withers talked with Baker. Baker advised Gower of the discrepancy in the physical descriptions of Withers and Jamey Withers. Gower checked additional computer records and found that Withers had previously used Jamey Withers' name and that there was an outstanding warrant for Withers' arrest. Gower arrested Withers and his companion left the scene. During a search incident to arrest, Gower found a vial of methamphetamine in Withers' shirt pocket.

The State charged Withers with unlawful possession of a controlled substance and first degree criminal impersonation. Withers moved to suppress the methamphetamine and his

misidentification statement, arguing that both resulted from an unlawful *Terry* stop.[1] The State conceded that Deputy Baker did not have the legal basis for a *Terry* stop but argued that Baker's encounter with Withers was a social contact that did not amount to an unlawful seizure. During the suppression hearing, the officers and Withers testified to the facts set forth above, and Withers admitted that he had lied about his identity.

The trial court denied the motion to suppress after concluding that the interaction between the officers and the men was a permissible social contact rather than a seizure, and the court entered written findings of fact and conclusions of law to support its ruling. The State then filed an amended information charging Withers with unlawful possession of a controlled substance and making a false or misleading statement to a public servant. After Withers agreed to a bench trial on stipulated facts, the trial court found him guilty as charged. Withers appeals the denial of his suppression motion.

## ANALYSIS

A. CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Withers argues that the evidence does not support some of the trial court's factual findings. Following the denial of a suppression ruling, we review challenged findings of fact for substantial evidence. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is sufficient "to persuade a fair-minded person of the truth of the stated premise." *Id.* We review conclusions of law de novo, but when a conclusion contains an assertion of fact, it functions

---

[1] A *Terry* stop allows a police officer to briefly detain and question an individual if the officer has a reasonable and articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

as a finding of fact and is reviewed under the substantial evidence rule. *Id.*; *State v. Luther*, 157 Wn.2d 63, 78, 134 P.3d 305, *cert. denied*, 549 U.S. 978 (2006). Unchallenged findings of fact are verities on appeal. *State v. Pierce*, 169 Wn. App. 533, 544, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012).

Withers challenges the factual support for parts of two findings of fact and one conclusion of law. First, he challenges finding of fact 6:

> Deputy Baker approached both subjects and asked to speak to them. *Both subjects voluntarily stopped* and talked to Deputy Baker. Neither subjects were detained, cuffed, or placed under arrest. Both subjects remained with their bicycles. The defendant was one of the two subjects contacted by Deputy Baker.

Clerk's Papers (CP) at 36-37 (emphasis added). Withers argues that the evidence does not support a finding that he and his friend voluntarily stopped.

Deputy Baker testified that when he got out of his car and approached Withers and his companion, the two men stopped. He testified that he did not order them to stop or stay and that he did not block their path. He added that Withers never indicated that he wanted to leave or did not want to talk. Withers testified that Baker sought permission to ask some questions before talking to him and his friend about the report concerning the stolen bike. Substantial evidence supports the statement in finding of fact 6 that Withers and his friend voluntarily stopped before talking with the deputy.

Second, Withers challenges finding of fact 9:

> Deputy Baker thought it was suspicious that the defendant had trouble remembering the correct date of birth and looked up Jamey Leeroy Withers in his computer system. *The defendant did not match the physical descriptions for Jamey Leeroy Withers.*

CP at 37 (emphasis added). Withers argues that the evidence does not support the finding that he did not match the physical descriptions of Jamey Leeroy Withers.

Deputy Baker testified that when he checked his computer for information about Jamey Withers, "[t]he physicals saw--they didn't quite match up either." Verbatim Report of Proceedings (VRP) at 10. Officer Gower testified that he checked other computer records "and looked at the record of the name he gave and the picture was kind of close but wasn't him." VRP at 48. Substantial evidence supports the statement in finding of fact 9 that Withers did not match the physical descriptions for Jamey Withers.

Third, Withers challenges conclusion of law 3:

> Deputy Baker's actions had all the hallmark[s] of a social contact, except for his instruction for the defendant to keep his hands visible. *Deputy Baker was justified in instructing the defendant to keep his hands visible for officer safety reasons and the instruction did not transform a social contact into a seizure.*

CP at 38 (emphasis added). Withers argues that the factual findings do not support this conclusion.

Withers' criticism of this conclusion is based partly on the principle that it contains a factual finding and should be scrutinized for substantial evidence. Withers argues that there was no factual justification for Deputy Baker's instruction to Withers to keep his hands visible.[2] He adds that this conclusion contradicts the State's claim that the interaction amounted only to a social contact.

---

[2] Withers does not assign error to finding of fact 8, which states in part that "[d]uring the course of the initial 5 minutes [sic] conversation, the defendant placed his hands in his pockets and was instructed by Deputy Baker to keep his hands out of his pockets for officer safety reasons." CP at 37. Unchallenged findings of fact are verities on appeal. *Pierce*, 169 Wn. App. at 544.

No. 46395-4-II

When defense counsel asked Withers why Baker asked him to keep his hands visible, Withers testified as follows: "Because there was—there was two of us, you know what I mean? So, I'm—I'm pretty sure for his personal safety rights he didn't want—he didn't want us—our hands where he could see them." VRP at 32. This testimony supports the statement in conclusion of law 3 that Baker instructed Withers to keep his hands out of his pockets for safety reasons.

Withers' additional complaint about this conclusion focuses on his assertion that the deputy's instruction converted the contact into a seizure. We address this question of law below.

B.     SOCIAL CONTACT OR SEIZURE?

Whether police have seized a person is a mixed question of law and fact. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). The trial court's factual findings are entitled to great deference, but the ultimate determination of whether those facts constitute a seizure is a question of law that we review de novo. *Id.* at 662-63.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect a citizen's right to be free from unreasonable search and seizure. *State v. Fortun-Cebada*, 158 Wn. App. 158, 168, 241 P.3d 800 (2010). A seizure occurs when an individual's freedom of movement is restrained and the individual would not believe that he is free to leave or decline a request due to an officer's use of force or display of authority. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003). This determination is made objectively by looking at the officer's actions. *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). The relevant question is whether a reasonable person in the individual's position would feel he or she was being detained. *Harrington*, 167 Wn.2d at 663.

A "social contact" is not a seizure. *State v. Guevara*, 172 Wn. App. 184, 188, 288 P.3d 1167 (2012). Where an officer suspects the possibility of criminal activity, he may question an individual and ask for identification without effecting a seizure. *O'Neill*, 148 Wn.2d at 577; *State v. Mote*, 129 Wn. App. 276, 282, 120 P.3d 596 (2005). A social contact rests "someplace between an officer's saying 'hello' to a stranger on the street" and an investigative detention. *Harrington*, 167 Wn.2d at 664. Police actions likely to trigger a seizure rather than social contact include the presence of several officers, an officer's display of a weapon, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Guevara*, 172 Wn. App. at 188.

Withers argues that several facts show that his interaction with Deputy Baker amounted to a seizure rather than mere social contact: Baker approached without any reason to believe Withers had acted illegally, Baker explained that he was investigating a possible theft, Baker instructed Withers to take his hands out of his pockets, Baker asked for identification, and a second officer arrived at the scene.

The fact that Baker approached the two men after hearing of a possible crime in the vicinity did not make his contact a seizure. Nor did the contact turn into a seizure after Baker explained that he was investigating a possible theft. An officer's suspicions regarding the possibility of criminal activity do not convert a social contact into a seizure. *O'Neill*, 148 Wn.2d at 574-75; *see also Mote*, 129 Wn. App. at 282 (officers must be able to approach citizens and inquire into whether they will answer questions as part of their community caretaking functions). Whether a person has been restrained by an officer must be determined by their interaction rather than the officer's motives. *O'Neill*, 148 Wn.2d at 575.

7

We have already explained that Deputy Baker's request for identification was a permissible part of the social contact. *Id.* at 577. As for the arrival of a second officer, Officer Gower came to the scene voluntarily after hearing the dispatch report, and he helped Baker check the identification that Withers provided. This assistance did not transform the contact into a seizure. *See Harrington*, 167 Wn.2d at 669-70 (arrival of second officer did not convert contact into seizure).

As the trial court recognized, the key issue is whether Deputy Baker's instruction to Withers to keep his hands out of his pockets rendered the contact a seizure. Our Supreme Court addressed this issue in *Harrington*, where the defendant was walking in public when officers stopped and questioned him. *Id.* at 661-62. The officer asked the defendant to remove his hands from his pockets and to consent to a search as another officer arrived. *Id.* at 662.

The *Harrington* court noted that lower Washington courts have found that an officer's request to keep hands out of one's pockets does not independently rise to the level of a seizure. *Id.* at 666-67 (citing *State v. Nettles*, 70 Wn. App. 706, 712, 855 P.2d 699 (1993), *review denied*, 123 Wn.2d 1010 (1994)). The *Harrington* court then cited cases from other jurisdictions holding that an officer's direction to a defendant to remove hands from pockets falls short of a seizure. *Id.* at 667 (citing *Duhart v. United States*, 589 A.2d 895, 898 (D.C. App. 1991) and *United States v. Barnes*, 496 A.2d 1040, 1044-45 (D.C. App. 1985)). Nevertheless, asking a person to remove hands from pockets adds to the officer's progressive intrusion and moves the interaction further from a valid social contact. *Id.* The interaction in *Harrington* did not mature into a seizure, however, until the officers made the request to frisk. *Id.* at 669-70; *see also Guevara*, 172 Wn. App. at 190 (request to search is inconsistent with social contact).

Other cases support the conclusion that without additional coercive measures, a request to keep hands visible does not convert a contact into a seizure. In *Nettles*, the officer called out to the defendant as he was walking away that she would like to speak with him. 70 Wn. App. at 708. When he stopped and turned around, the officer told him to remove his hands from his pockets and come toward the patrol car. *Id.* As he did so, he threw a baggie under the patrol car. *Id.* The *Nettles* court affirmed the denial of the motion to suppress, holding that a seizure does not occur "when a police officer merely asks an individual whether he or she will answer questions or when the officer makes some further request that falls short of immobilizing the individual." *Id.* at 710. The court concluded that telling the defendant to remove his hands from his pockets did not convert the encounter into a seizure. *Id.* at 712.

The *Fortun-Cebada* court cited *Nettles* in holding that an officer's instruction to an individual to remove his hands from a pocket did not turn the contact into a seizure. 158 Wn. App. at 169. In *Fortun-Cebada*, the officer asked a suspected drug buyer for permission to speak to him before telling the buyer to take his hands out of his sweatshirt pocket. *Id.* It was otherwise undisputed that the buyer was under no obligation to talk to the officer and could have walked away. *Id.* In *Fortun-Cebada*, as in *Nettles*, the direction to remove hands from a pocket did not convert a permissible social contact into a seizure. *Id.* at 169-70.

We reach the same result here. Deputy Baker's instruction to Withers to keep his hands

No. 46395-4-II

visible did not transform a social contact into a seizure. We uphold the trial court's denial of Withers' suppression motion and affirm his convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Sutton, J.

10