# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51213-1-II |
| Respondent, | |
| v. | |
| LONG PHAM, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Long Pham appeals his jury trial convictions for unlawful possession of a controlled substance (heroin) with intent to deliver, unlawful possession of a controlled substance (methamphetamine), and unlawful possession of a controlled substance (buprenorphine).  He argues that the trial court erred when it denied his motion to suppress the evidence discovered following a search of his backpack and person and when it refused to admit additional evidence under ER 410 after both parties had rested their cases.  The State concedes that the ER 410 ruling was error, but it argues that the trial court properly refused to reopen the defense to consider this evidence.  We hold that the trial court did not err when it concluded that Pham's initial contact with law enforcement was a social contact, and the admissibility of the additional evidence is irrelevant in light of the trial court's unchallenged ruling denying Pham's motion to reopen the defense.  Accordingly, we affirm.

FACTS

I. CONTACT AND ARREST

The unchallenged findings of fact from the suppression hearing in this case establish the following background facts.[1] Around 11:30 PM on October 15, 2016, Clark County Sheriff's Detective Ryan Preston was on routine patrol and decided to run a check on the license plate of a vehicle that was parked in an unusual location in a convenience store parking lot. While waiting for information about the vehicle, Detective Preston "circled the parking lot." Clerk's Papers (CP) at 156, 1 Report of Proceedings (RP) at 34, 36. Detective Preston learned that the vehicle was owned by a female. When the detective again approached the vehicle, he saw Pham walking away from it.

Remaining in his patrol car, Detective Preston approached Pham without activating the patrol vehicle's lights and sirens. Using a normal speaking tone, Detective Preston asked Pham if he had come from the store, and Pham stated that he had. The detective then asked Pham if he was the vehicle's registered owner. Pham "stated with uncertainty that the vehicle belonged to a friend." CP at 156 1 RP at 45-46. The detective "then told [Pham] that he wanted to talk to him about the vehicle and whether it was stolen." CP at 156, 1 RP at 46. Pham "immediately started running away through the parking lot." CP at 156, 1 RP at 46.

As Pham fled, the detective followed in his patrol car and observed Pham discard his backpack. Pham eventually fell, and Detective Preston was able to detain Pham. "Detective

---

[1] Unchallenged findings of fact are considered verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Preston did not give [Pham] any commands or orders to stop at any point prior to his arrest." CP at 156.

After arresting Pham, the detective searched Pham's backpack, a small plastic container that [Pham] dropped when he fell, and [Pham's] person, and found items associated with drug sales and use, heroin, Subutex,[2] and methamphetamine. The State charged Pham by amended information with possession of a controlled substance (heroin) with intent to deliver, unlawful possession of a controlled substance (methamphetamine), and unlawful possession of a controlled substance (buprenorphine).

## II. MOTION TO SUPPRESS

Pham moved to suppress the evidence found during the search following his arrest. He argued that Detective Preston lacked reasonable articulable suspicion to justify a *Terry*[3] stop. The State responded that the initial contact was a lawful social contact and that Detective Preston lawfully initiated the *Terry* stop after Pham ran away and started discarding items.

Detective Preston, the only witness to testify at the suppression hearing, testified to the facts set out above. In addition, Detective Preston testified that he did not tell Pham that "he wasn't free to leave or anything like that." 1 RP at 43.

The trial court denied the motion to suppress. The trial court's written findings are described in the facts above. The trial court also entered the following conclusion of law:

---

[2] Subutex is a brand name for buprenorphine.

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*Detective Preston's initial contact with the Defendant was a social contact and did not rise to the level of a seizure.* The contact occurred in a public place, there were no lights or sirens activated, there were no other officers present, and [Pham] was free to leave. Whether Detective Preston was investigating a potential crime at the time of his initial contact with [Pham] did not elevate the social contact to a seizure.

CP at 157 (emphasis added).

## III. TRIAL

### A. TESTIMONY

At trial, Detective Preston testified about his initial contact with Pham, Pham's flight, the fact Pham discarded his backpack, and the container that was in Pham's hand when he fell. The detective also testified that he found "multiple drug paraphernalia items, as well as multiple drugs" during a search incident to arrest. 2 RP at 159.

Detective Preston further testified that Pham had admitted that he had been "distributing or delivering, selling, drugs." 2 RP at 185. Pham also told Detective Preston that "he was a middleman." 2 RP at 186.

Pham testified that he was a drug addict and admitted that he had possessed the methamphetamine, heroin, and buprenorphine that Detective Preston found after the arrest. Pham asserted, however, that the drugs were for personal use. He also denied having admitted that he was a drug dealer or to ever having dealt drugs.

On cross-examination, Pham denied having any prior convictions for possession with intent to deliver. Even after the State presented Pham with a copy of a 2014 judgment and sentence signed by Pham showing a guilty plea conviction for a possession with intent to deliver charge, Pham continued to deny having pleaded guilty to such a charge and asserted that this conviction was not on his "rap sheet." 3 RP at 289.

4

On redirect, Pham again asserted that he did not have a conviction for possession with intent to deliver on his "rap sheet." 3 RP at 291. Defense counsel rested without asking for any additional time to present evidence that could have explained why Pham did not think he had a conviction for possession with intent to deliver.

B. MOTIONS TO ADMIT DECLARATION OF CRIMINAL HISTORY AND TO REOPEN THE RECORD

After both parties rested, Pham's counsel advised the trial court that the State's plea offer in this case included a declaration of criminal history that did not list any possession with intent to deliver convictions and advised the trial court that this document was relevant to explain Pham's "confusion" regarding whether he had a prior possession with intent to deliver conviction. 3 RP at 306-07. When the trial court responded that a request to admit the declaration of criminal history was untimely, Pham moved to reopen the defense.

The trial court stated that it was not preventing Pham from arguing that he had been confused based on other evidence in the record, but it ruled that the declaration of criminal history was inadmissible under ER 410[4] because it was part of a plea offer. The trial court also denied the motion to reopen the defense, noting that Pham had "ample opportunity" to clarify Pham's confusion on redirect examination, well before both parties had rested. 3 RP at 343.

The jury found Pham guilty as charged. Pham appeals.

---

[4] ER 410(a) provides in part: "Except as otherwise provided in this rule, evidence of . . . an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."

ANALYSIS

I. DENIAL OF MOTION TO SUPPRESS

Pham first challenges the trial court's denial of his suppression motion. He argues that, taken in context, Detective Preston's telling Pham that he "wanted to talk to [Pham] about the vehicle and whether it was stolen" amounted to a direction or command to Pham to speak to the detective and that this show of authority elevated the social contact to a seizure. Br. of Appellant at 11; CP at 156. We disagree.

A. LEGAL PRINCIPLES

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect a citizen's right to be free from unreasonable search and seizure and a citizen's freedom from interference in his or her private affairs. *State v. Day*, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). Whether police have seized a person is a mixed question of law and fact. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). The trial court's factual findings are "'entitled to great deference, but the ultimate determination of whether those facts constitute a seizure'" is a question of law that we review de novo. *Harrington*, 167 Wn.2d at 662 (internal quotation marks omitted) (quoting *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997)).

A "seizure occurs when 'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe [that he] is free to leave or decline a request due to an officer's use of force or display of authority.'" *Harrington*, 167 Wn.2d at 663 (quoting *State v. Rankin*, 151 Wn.2d 689, 695, 925 P.3d 202 (2004)). This determination is an objective determination based on the officer's actions. *Rankin*, 151 Wn.2d at 695. "The relevant

question is whether a reasonable person in the individual's position would feel he or she was being detained." *Harrington*, 167 Wn.2d at 663 (citing *State v. O'Neill*, 148 Wn.2d 564, 581, 62 P.3d 489 (2003)).

But "[a] 'social contact' is not a seizure." *State v. Guevara*, 172 Wn. App. 184, 188, 288 P.3d 1167 (2012) (quoting *Harrington*, 167 Wn.2d at 664-65). And when an officer suspects the possibility of criminal activity, he or she may question an individual and ask for identification without effecting a seizure. *O'Neill*, 148 Wn.2d at 577. A social contact falls "someplace between an officer's saying 'hello' to a stranger on the street" and an investigative detention. *Harrington*, 167 Wn.2d at 664. Police actions likely to result in a seizure rather than social contact include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Guevara*, 172 Wn. App. at 188 (internal quotation marks omitted) (quoting *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998)).

B. NO SEIZURE

Here, the trial court's unchallenged findings of fact do not show that Detective Preston displayed his weapon, physically touched Pham, blocked Pham's path, or attempted to prevent Pham from leaving. The trial court also found that Detective Preston "used a normal speaking tone when questioning" Pham. CP at 156. These factors weigh in favor of concluding that the detective's contact with Pham was a social contact, at least until the point Pham fled.

Pham argues, however, that Detective Preston's statement that he "wanted to talk to [Pham] about the vehicle and whether it was stolen," taken in context, "carried the implication that compliance with [Detective] Preston's request might be compelled." Br. of Appellant at 11; CP at 156. We disagree.

Asking a question about possible illicit activity does not amount to a seizure unless the question was asked in a coercive manner. *State v. Thorn*, 129 Wn.2d 347, 353-54, 917 P.2d 108 (1996), *overruled on other grounds by O'Neill*, 148 Wn.2d at 571. Here, the trial court found that Detective Preston told Pham that "he wanted to talk to [Pham] about the vehicle and whether it was stolen." CP at 156. But the trial court did not find that the detective commanded Pham to speak to him, told Pham that he could not leave, used an authoritative tone of voice, displayed a weapon, touched Pham, asked for permission to search Pham, or physically blocked Pham from leaving. Nor did the trial court find that any other officers were present. A reasonable person would have felt free to end the encounter and walk away.

Citing *Harrington*, Pham contends that the Detective's questioning was essentially an accusation that Pham was "knowingly associated with a stolen vehicle," so it "carried the implication that compliance with Preston's request might be compelled." Br. of Appellant at 11. But Pham's reliance on *Harrington* is not persuasive.

In *Harrington*, the court held that the cumulative effect of a series of police actions can amount to a progressive intrusion sufficient to establish a seizure even though each individual action would not amount to a seizure. 167 Wn.2d at 669-70; *see also State v. Bailey*, 154 Wn. App. 295, 300, 224 P.3d 852 (2010). But *Harrington* is factually distinguishable from this case because there was more than one officer present, the officers asked for permission to pat

Harrington down for officer safety concerns, and the officers physically patted Harrington down. 167 Wn.2d at 660-61. Here, there were no such similar circumstances. Thus, the degree of intrusion here was significantly less and, therefore, not as suggestive of a seizure as the contact in *Harrington*. Instead, in this case, the detective's focus was on a request for information. And "[i]t is well settled that a mere request for information does not constitute a seizure." *State v. Whitaker*, 58 Wn. App. 851, 854, 795 P.2d 182 (1990).

Pham further asserts that his decision to flee rather than decline to talk to Detective Preston and walk away shows that the detective's "language constituted a show of authority." Br. of Appellant at 11. But the test is whether a reasonable person would have believed he was not free to leave, not whether Pham subjectively believed he was not free to leave. *Harrington*, 167 Wn.2d at 663; *State v. Butler*, 2 Wn. App. 2d 549, 566, 411 P.3d 393 (2018) (citing *Young*, 135 Wn.2d at 510 (rejecting the use of a subjective test in seizure analysis)). Thus, Pham's subjective assessment of the situation is irrelevant.

Pham also cites *Whitaker*, *State v. Ellwood*, 52 Wn. App. 70, 757 P.2d 547 (1988), *State v. Sweet*, 44 Wn. App. 226, 721 P.2d 560 (1986), and *State v. Friederick*, 34 Wn. App. 537, 663 P.2d 122 (1983). But the cases listed in *Whitaker* all involve situations where there were clear showings of authority by law enforcement. 58 Wn. App. at 853-54. Similarly, *Ellwood*, *Sweet*, and *Friederick* are distinguishable because, unlike here, each of these cases involved officers directly commanding a defendant to wait, to halt, or to stop. *Ellwood*, 52 Wn. App. at 73-74; *Sweet*, 44 Wn. App. at 230, *Friederick*, 34 Wn. App. at 540.

The trial court did not err when it concluded that the detective's initial contact with Pham was a social contact. Accordingly, Pham fails to show that the trial court erred when it denied his motion to suppress.

II. MOTION TO ADMIT ADDITIONAL EVIDENCE AND MOTION TO REOPEN DEFENSE CASE

Pham next argues that the trial court erred when it ruled that the declaration of criminal history from the plea offer was inadmissible under ER 410. Even if this ruling was error, which the State concedes it is, the error is harmless because the trial court properly refused to allow Pham to reopen the defense regardless of this evidentiary ruling.

The trial court denied Pham's motion to reopen the defense because Pham had ample opportunity to clarify his confusion about his prior conviction on redirect examination. Pham does not challenge this ruling. Nor has he responded to the State's argument that the trial court properly refused to allow Pham to reopen the defense. Because Pham does not challenge the trial court's denial of his motion to reopen the defense, that decision stands regardless of the ER 410 ruling. Because the trial court declined to reopen the case, whether the declaration of criminal history was admissible is immaterial and Pham fails to show that he is entitled to relief on this ground.

No. 51213-1-II

CONCLUSION

We hold that the trial court did not err when it concluded that Pham's initial contact with law enforcement was a social contact and denied the motion to suppress, and the admissibility of the additional evidence is irrelevant in light of the trial court's unchallenged ruling denying Pham's motion to reopen the defense. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._
SUTTON, J.

We concur:

_Maxa, C.J._
MAXA, C.J.

_Melnick, J._
MELNICK, J.

11